**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Bonnie Delorme, | ) | **ORDER DENYING PLAINTIFF'S** |
| | ) | **MOTION FOR CLASS** |
| Plaintiff, | ) | **CERTIFICATION AND DENYING** |
| | ) | **PLAINTIFF'S MOTION FOR** |
| vs. | ) | **PARTIAL SUMMARY JUDGMENT** |
| | ) | |
| Autos, Inc., a North Dakota Corporation | ) | |
| d/b/a/ Global Auto; RW Enterprises, Inc., | ) | Case No. 4:11-cv-039 |
| a North Dakota Corporation; Robert | ) | |
| Opperude, an individual; Randy Westby, an | ) | |
| individual; and James Hendershot, an | ) | |
| individual, | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court are four motions filed by the plaintiff, Bonnie Delorme. Delorme filed
motions for class certification and to certify class counsel on October 14, 2011. <u>See</u> Docket Nos.
30 and 39. Defendants Autos, Inc., Robert Opperude, and James Hendershot filed responses in
opposition to the motions on November 2 and December 14, 2011. <u>See</u> Docket Nos. 37 and 49.
Defendants RW Enterprises and Randy Westby filed responses in opposition to the motions on
November 7 and December 14, 2011. <u>See</u> Docket Nos. 40 and 51.

Delorme filed a "Motion for Summary Judgment on Count II, Federal Truth-In-Lending Act
Count III, North Dakota Retail Installment Sales Act" on November 22, 2011. <u>See</u> Docket No. 41.
The Defendants filed responses in opposition to the motion on December 16, 2011. <u>See</u> Docket Nos.
52 and 53. Delorme filed a reply brief on December 30, 2011. <u>See</u> Docket No. 58.

Delorme filed a "Motion for Summary Judgment on Count I – Usury" on December 20,
2011. <u>See</u> Docket No. 55. RW Enterprises and Westby filed a response in opposition to the motion

on January 13, 2012.  <u>See</u> Docket No. 62.  Delorme filed a reply brief on January 24, 2012.  <u>See</u>

Docket No. 63.


I.    **BACKGROUND**

      Bonnie Delorme is a member of the Turtle Mountain Band of Chippewa Indians and lives

on the Turtle Mountain Indian Reservation.  On June 2, 2010, Delorme purchased a 2007 Chevrolet

from Autos, Inc. (d/b/a/ Global Auto) ("Autos, Inc.") in Minot, North Dakota.  <u>See</u> Docket No. 42-3.

The total price was $9,485, including a $195 "document administration fee" and a $300 "loan fee."

Delorme paid a $1,500 down payment in two installments of $750.  Delorme then borrowed $7,985

to cover the remainder of the purchase price.    The "Retail Installment Contract and Security

Agreement" ("the Contract") between Delorme and Autos, Inc. states that the annual percentage rate

of the loan is 25%.  Delorme was to repay the loan in 36 monthly installments of $317.48, due on

the 15th of each month, beginning on July 15, 2010.  Delorme would have to pay a $25 late fee if

a payment was more than ten days late.  On June 2, 2010, Autos, Inc. assigned its interest in

Delorme's contract to RW Enterprises, Inc. ("RW Enterprises").  Delorme had no personal dealings

with anyone working for or representing RW Enterprises.

      On October 30, 2010, Autos, Inc. repossessed Delorme's vehicle from Delorme's place of

work on the Turtle Mountain Indian Reservation, and towed it to Minot.  Autos, Inc. did not file a

replevin action in the Tribal Court of the Turtle Mountain Indian Reservation.  Delorme was not

delinquent on her monthly payments.  The next day, Delorme got a ride to Minot, paid the monthly

payment, a $25 late fee and a tow fee, and retrieved the vehicle.

On December 14, 2010, Delorme sued Autos, Inc. and Robert Opperude in Tribal Court.

Delorme requested damages on the following grounds:

A.      For damages, actual and punitive, and declaratory relief to remedy the losses accrued to plaintiff by reason of defendants' unlawful exercise of "self-help" repossession within the exterior boundaries of the Turtle Mountain Indian Reservation under the guise of fraud and deception; and without compliance with the applicable provisions of the Tribal Constitution and Code and under the supervision of the Turtle Mountain Tribal Court.

B.      For damages, actual and punitive, and declaratory relief to remedy the losses accrued to plaintiff by reason of defendants' violation of the Constitutional rights of the Plaintiff to due process of the law.

C.      For damages, actual and punitive, to remedy the losses accrued to plaintiff by reason of the conversion (the unlawful taking and extortionate withholding of the use thereof) of the plaintiff's vehicle.

D.      For damages, actual and punitive, to remedy the losses accrued to the plaintiff by reason of Defendants' intentional affliction of emotional and mental distress; and

E.      For damages, actual and punitive, to remedy the losses accrued to the plaintiff by reason of Defendants conduct which has caused Plaintiff to suffer public humiliation and embarrassment.

See Docket No. 49-2, p. 2 (errors in original).

On May 14, 2011, the parties entered into a "Settlement, Release, and Indemnity Agreement" providing that Delorme receive the following relief:

a.      The sum of $10,000.00 (Ten Thousand Dollars) to [Bonnie Delorme] and her attorneys, Robert Ackre and Larry Baer;

b.      The delivery of unencumbered title to the 2007 Chevrolet . . . automobile described in the Complaint.

See Docket No. 49-3.

On January 13, 2011, the plaintiff, Bonnie Delorme, filed a complaint in the state district court of Ward County, North Dakota. See Docket No. 1-1. The complaint alleges the Defendants

3

committed usury (Count I), violated the federal Truth in Lending Act (Count II), violated North Dakota's Retail Installment Sales Act (Count III), violated North Dakota's Unlawful Sales or Advertising Practices Act (Count IV), violated the federal Fair Debt Collection Practices Act (Count V), denied Delorme due process of law and breached the duty of good faith (Count VI), and violated federal and state racketeer influenced and corrupt organizations laws (Counts VII and VIII). See Docket No. 1-1. The Defendants removed the case to federal court on April 27, 2011. See Docket No. 1. Delorme seeks to sue on her own behalf and on behalf of a class defined as "persons known and unknown who have financed the purchase of automobiles with the financing being provided by either Defendant Autos, Inc. or Defendant RW Enterprises, Inc., directly or indirectly, at anytime during the four year period immediately preceding the commencement of this civil action." See Docket No. 1-1.

On July 8, 2011, the Court issued a scheduling order stating that "Plaintiff shall have until September 15, 2011, to file a motion for class certification. Defendants shall have until November 15, 2011, to file a response." See Docket No. 10 (emphasis in original). On October 14, 2011, Delorme filed a "Motion and Brief in Support of Motion to Certify Class Action Status for Causes of Action I, III, IV, VII, and VIII and for the Appointment of Class Counsel." See Docket Nos. 30 and 39. Delorme contends that her proposed class meets the prerequisites of Federal Rule of Civil Procedure 23(a) and should be certified as a class under Rule 23(b)(1) or (3).On November 2, 2011, the Defendants filed a response in opposition to the motion. See Docket No. 37. The Defendants contend Delorme's motion should be declined because it is untimely. They also contend the proposed class members cannot be readily determined to have standing, individual issues predominate over common ones, and that a class action is not superior to other methods.

On November 22, 2011, Delorme filed a "Motion for Summary Judgment on Count II, Federal Truth-in-Lending Act Count III, North Dakota Retail Installment Sales Act." <u>See</u> Docket No. 41. Delorme argues that Autos, Inc. unlawfully failed to include the $300 loan fee and $195 document administration fee when calculating the annual percentage rate, and the contract does not state the proper annual percentage rate. RW Enterprises and Randy Westby filed a response in opposition to the motion on December 16, 2011. <u>See</u> Docket No. 52. RW Enterprises and Westby contend there are questions of fact as to whether RW Enterprises, as an assignee, can be held liable for Autos, Inc.'s alleged Truth in Lending Act violation, whether such a violation was willful, and whether the loan fee and document administration fee constitute "finance charges." Autos, Inc. and Robert Opperude filed a response in opposition to the motion on December 16, 2011. <u>See</u> Docket No. 53. They contend the loan fee and document administration fee do not constitute finance charges.

On December 20, 2011, Delorme filed a "Motion for Summary Judgment on Count I – Usury." <u>See</u> Docket No. 55. Delorme alleges the real interest rate charged by Autos, Inc. was usurious. The Defendants filed responses in opposition to the motion on January 13, 2012. <u>See</u> Docket Nos. 60 and 62. They contend that North Dakota's statute prohibiting usury (N.D.C.C. § 47-14-09) is inapplicable because the transaction is governed by North Dakota's Retail Installment Sales Act (N.D.C.C. ch. 51-13).

## II.    LEGAL DISCUSSION

### A.    CLASS ACTION

Rule 23 of the Federal Rules of Civil Procedure governs a district court's consideration of a motion for class certification. The decision whether to certify a class action is left to the district court's "broad discretion." Rattray v. Woodbury Cnty., Iowa, 614 F.3d 831, 835 (8th Cir. 2010) (citing In re Milk Prods. Antitrust Litig., 195 F.3d 430, 436 (8th Cir. 1999); Bishop v. Comm. on Prof'l Ethics & Conduct, 686 F.2d 1278, 1287 (8th Cir. 1982)). In determining whether to certify a class action, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974) (quoting Miller v. Mackey Int'l, 452 F.2d 424, 427 (5th Cir. 1971). "[T]he court must conduct a 'rigorous analysis' to ensure that the prerequisites of Rule 23 are satisfied." Elizabeth M. v. Montenez, 458 F.3d 779, 784 (8th Cir. 2006) (quoting Gen. Tel. Co. of the S.W. v. Falcon, 457 U.S. 147, 161 (1982)). "The district court may grant a motion to certify a class action only if the putative class representative satisfies all four of the requirements set forth in Federal Rule of Civil Procedure 23(a), and the class action satisfies one of the three subsections of Federal Rule of Civil Procedure 23(b)." Rattray, 614 F.3d at 834-35 (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613-14 (1997)). The plaintiff bears the burden of satisfying the requirement of Rule 23. Coleman v. Watt, 40 F.3d 255, 258-59 (8th Cir. 1994).

The Court notes that Delorme's "Motion to Certify Class Action Status for Causes of Action I, III, IV, VII, and VIII and for the Appointment of Class Counsel" was not timely filed. On July 8, 2011, Magistrate Judge Charles S. Miller, Jr. issued a scheduling order providing that Delorme had until September 15, 2011, to file a motion for class certification. See Docket No. 10. Delorme's

motion for class certification was filed almost one month after the deadline, October 14, 2011. <u>See</u> Docket No. 30. Delorme has not provided an explanation for the late filing. The Defendants request that the Court dismiss the motion for failure to meet the deadline. The Court, in the exercise of its broad discretion, will consider the merits of the motion despite the late filing.

Rule 23(a) of the Federal Rules of Civil Procedure sets forth the prerequisites to a class action. It provides:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "In common shorthand, the requirements for class actions under Rule 23(a) are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." <u>Rattray</u>, 614 F.3d at 835 (citing <u>Amchem</u>, 521 U.S. at 613). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule–that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2551 (2011).

Delorme bears the burden of proving that her proposed class meets the prerequisites of Rule 23(a). <u>Coleman</u>, 40 F.3d at 258-59. In the brief in support of her motion, Delorme makes the following assertions regarding the Rule 23(a) prerequisites:

(1)     the class is so numerous that joinder of all members is impracticable because the class consists of more than 500 members.

(2)     there are questions of both law and fact common to the class because all members of the proposed class have purchased motor vehicles on credit from Defendant Autos, Inc., and that credit has been indirectly provided by by [sic] Defendant RW Enterprises, Inc., through a common scheme or devise;

(3)     the claims of the representative party is typical of the claims of the class

    *       in every instance, the members of the members of the class were charged loan fees

    *       in every instance, the members of the class were charged an un-itemized document administration fees

    *       in every instance, the costs of both the loan fees charged and the document administration fees charged were not included within the disclosure of the cost of borrowing funds from the Defendants, materially understating the true cost of borrowing funds from the Defendants;

    *       in every instance, each member's contract provided for the assessment of a $25.00 Late Charge upon all payments made more than ten days late;

(4)     the representative party will fairly and adequately protect the interests of the class.

<u>See</u> Docket No. 31 (errors in original).  Delorme provided the following additional justifications for granting class action status:

(A)     the class members' interests in individually controlling the prosecution of separate actions is minimal – all members of the class have similar interests, while the common questions of law and fact predominate over any questions affecting individual members only;

(B)     the extent and nature of this civil litigation concerning the facts of this case has already been brought by the named plaintiffs and no others, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy;

<table>
<tr><td>(C)</td><td>to conserve judicial time and resources, there exists the desirability to concentrate the litigation of these claims in the United States District Court;</td></tr>
<tr><td>(D)</td><td>the difficulties in managing this civil action as a class action are minimal due to the proximity of most affected parties, knowledge of the names and addresses of each member of the class, and documentation of the nuances of damages unique to each member of the class; and</td></tr>
<tr><td>(E)</td><td>to the best of plaintiffs' knowledge, no other actions by individual member of the class which plaintiffs seek to represent have, to this date, been initiated.</td></tr>
</table>

See Docket No. 31.

The Defendants contend that Delorme and the proposed class members do not share sufficiently common questions of law or fact.

> Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they "have suffered the same injury," <u>Falcon</u>, <u>supra</u>, at 157 . . . . Their claims must depend upon a common contention. . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

<u>Wal-Mart Stores, Inc.</u>, 131 S. Ct. at 2551.

Delorme has filed over 2,900 pages of loan documents from proposed class members. <u>See</u> Docket Nos. 46 through 46-63. Even a cursory review of the loan documents reveals that not all of the proposed class members were charged the same fees or interest rate as Delorme. Some were charged a document administration fee of $65, some were charged a fee of $195. Some were charged a loan fee of $200, some $300, and some no loan fee at all. Therefore, Delorme's assertion that "in every instance, the members of the members of the class were charged loan fees" is not accurate. <u>See</u> Docket No. 31. In addition, the Court would need to engage in an examination of each particular loan transaction to determine whether the Defendants violated state law or federal

law. The Court finds by a preponderance of the evidence that Delorme has not met her burden under Rule 23(a)(2) of showing there are questions of law or fact common to the class.

The Defendants also contend that Delorme will not fairly and adequately protect the interests of the class. The Eighth Circuit Court of Appeals has explained:

> Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This requirement depends upon two factors: "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class. Eisen v. Carlisle and Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968)." Wetzel v. Liberty Mutual Insurance Co., 508 F.2d 239, 247 (3rd Cir. 1975), cert. denied, 421 U.S. 1011. Accord, [Jenson v. Continental Financial Corporation, supra, 404 F. Supp. 806, 811 (D. Minn. 1975)].

United States Fid. & Guaranty Co. v. Lord, 585 F.2d 860, 873 (8th Cir. 1978).

The Defendants argue that Delorme's interests are adverse to those of the class because she owns her vehicle outright and no longer owes the Defendants for the loan. In the companion Tribal Court action, the parties reached a settlement in which the Defendants agreed to pay Delorme $10,000 and deliver to Delorme unencumbered title to the 2007 Chevrolet. See Docket No. 49-3. The settlement agreement also states:

> This agreement in no manner affects the claims and defenses now pending in a separate civil action (Case No. 4:11-cv-00039) presently before the United States District Court for the District of North Dakota, which alleges acts and subject matter not within the jurisdiction of the Tribal Court. This agreement shall not serve or act as a collateral estoppel, res judicata, or any admission to any of the factual or legal questions at issue before the Federal Court civil action.

See Docket No. 49-3. This Court is not bound by this statement in the parties' Tribal Court settlement agreement. Delorme bears the burden of showing that she will fairly and adequately protect the interests of the class. In the brief in support of her motion, she cursorily states, "[T]he representative party will fairly and adequately protect the interests of the class." The fact that

Delorme owns clear title to her vehicle and no longer owes money to the Defendants makes her situation significantly different from many of the proposed class members. The Court finds by a preponderance of the evidence that Delorme has not met her burden under Rule 23(a)(4) of showing that she will fairly and adequately represent the interests of the class. Therefore, Delorme's motion for class certification and to certify class counsel is denied. In addition, the motion is denied as it is untimely.

**B.     <u>COUNT ONE – USURY</u>**

Delorme contends the interest rate charged on her loan is usurious and in violation of N.D.C.C. § 47-14-09, which provides, in part:

1.     Except as otherwise provided by the laws of this state, a person, either directly or indirectly, may not take or receive, or agree to take or receive, in money, goods, or things in action, or in any other way, any greater sum or greater value for the loan or forbearance of money, goods, or things in action than five and one-half percent per annum higher than the current cost of money as reflected by the average rate of interest payable on United States treasury bills maturing in six months in effect for North Dakota for the six months immediately preceding the month in which the transaction occurs, as computed and declared on the last day of each month by the state banking commissioner, but that in any event the maximum allowable interest rate ceiling may not be less than seven percent, and in the computation of interest the same may not be compounded; provided, however, that a minimum interest charge of fifteen dollars may be made. A contract may not provide for the payment of interest on interest overdue, but this section does not apply to a contract to pay interest at a lawful rate on interest that is overdue at the time such contract is made. Any violation of this section is deemed usury.

2.     This section does not apply to a:

. . .

e.     Loan made by a lending institution which is regulated or funded by an agency of a state or of the federal government.

N.D.C.C. § 47-14-09.

The Defendants contend the transaction between Delorme and Autos, Inc. is not subject to

N.D.C.C. § 47-17-09. They argue that North Dakota's Retail Installment Sales Act, N.D.C.C. ch.

51-13, governs the transaction. Section 51-13-01 of the North Dakota Century Code provides the

following definitions:

4. "Finance charge" means the amount which the retail buyer contracts to pay or pays for the privilege of purchasing the personal property to be paid for by the buyer in installments; it does not include the amounts, if any, charged for insurance premiums, delinquency charges, attorney's fees, court costs, collection expenses, or official fees.

. . .

7. "Official fees" means the filing or other fees required by law to be paid to a public officer to perfect the interest or lien retained or taken by a seller under the retail installment contract, and to file or record a release, satisfaction, or discharge of the contract, and license, certificate of title, and registration fees imposed by law.

. . .

9. "Retail buyer" or "buyer" means a person who buys personal property from a retail seller in a retail installment sale.

10. "Retail installment contract" or "contract" means an agreement, entered into in this state, pursuant to which the title to or a lien upon the personal property, which is the subject matter of a retail installment sale, is retained or taken by a retail seller from a retail buyer as security, in whole or in part, for the buyer's obligation, or a contract for the bailment or leasing of personal property by which the bailee or lessee contracts to pay as compensation for its use a sum substantially equivalent to or in excess of its value and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming, the owner of the personal property upon full compliance with the terms of the contract.

11. "Retail installment sale" or "sale" means a sale, other than for the purpose of resale, of personal property by a retail seller to a retail buyer for a price payable in one or more deferred payments.

12. "Retail seller" or "seller" means a person who sells personal property to a retail buyer.

N.D.C.C. § 51-13-01. The Retail Installment Sales Act also provides:

A retail seller may contract for in a retail installment contract and charge, receive, and collect the finance charge computed on the principal balance of the contract or obligation from the date thereof until paid. A retail seller who complies with the disclosure provisions of this chapter is deemed a regulated lender under section 47-14-09.

N.D.C.C. § 51-13-03(1). The disclosure provisions of N.D.C.C. § 51-13-02(2) state:

a. If the retail installment sale for which the retail installment contract is made is not subject to the Truth in Lending Act [15 U.S.C. 1601-1667e], this subsection applies. The printed portion of the contract must be in at least eight-point type. The contract must contain printed or written in a size equal to at least ten-point bold type:

(1) Either at the top of the contract or directly above the space reserved for the signature of the buyer, the words "RETAIL INSTALLMENT CONTRACT".

(2) A specific statement that liability insurance coverage for bodily injury and property damage caused to others is not included, if that is the case.

(3) The following notice: "NOTICE TO THE BUYER: 1. Do not sign this contract before you read it or if it contains any blank space. 2. You are entitled to a completely filled-in copy of this contract when you sign it. 3. Under the law, you have the following rights, among others: (a) to pay off in advance the full amount due and to obtain a partial refund of the finance charge; (b) to redeem the property if repossessed for a default within the time provided by law; (c) to require, under certain conditions, a resale of the property if repossessed. 4. If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request."

b. The seller shall deliver to the buyer a legible copy of the contract or any other document the seller has required or requested the buyer to sign. Until the seller does so, a buyer who has not received delivery of the personal property has an unconditional right to cancel the contract and to receive immediate refund of all payments made and redelivery of all goods traded in

to the seller on account of or in contemplation of the contract. Any acknowledgment by the buyer of delivery of a copy of the contract must be printed or written in a size equal to at least ten-point bold type and, if contained in the contract, must also appear directly above the space reserved for the buyer's signature. The buyer's written acknowledgment of delivery of a copy of a contract is conclusive proof of such delivery and of compliance with this subdivision in any action or proceeding by or against an assignee of the contract without knowledge to the contrary when the assignee purchases the contract.

c.    The contract must contain:

   (1)    The names of the seller and the buyer, the place of business of the seller, the residence or place of business of the buyer as specified by the buyer and a description of the personal property including its make, year model, model and identification numbers or marks, if any, and whether it is new or used.

   (2)    The cash price of the personal property which is the subject matter of the retail installment sale.

   (3)    The amount of the buyer's downpayment, itemizing the amounts paid in money and in goods and containing a brief description of the goods, if any, traded in.

   (4)    The difference between paragraphs 2 and 3, which is the unpaid balance of cash price.

   (5)    The amount, if any, included for insurance, specifying the coverages.

   (6)    The amount, if any, of official fees.

   (7)    The amount financed, which is the sum of paragraphs 4, 5, and 6.

   (8)    The amount of the finance charge, if any.

   (9)    The total of payments, which is the sum of paragraphs 7 and 8, payable by the buyer to the seller, the number of installments required, the amount of each installment expressed in dollars, and the due date or period thereof.

   (10)   The deferred payment price, which is the sum of the amounts determined in paragraphs 2, 5, 6, and 8.

. . .

    The items need not be stated in the sequence or order set forth above; additional items may be included to explain the calculations involved in determining the amount to be paid by the buyer.

. . .

e.    A contract may provide for the payment by the buyer of a delinquency and collection charge on each installment in default for a period of more than ten days in an amount equal to ten percent of the delinquent installment payment or ten dollars, whichever is less; provided, that only one such delinquency and collection charge may be collected on each installment in addition to interest accruing thereon.

N.D.C.C. § 51-13-02(2).

    In <u>Mandan Supply, Inc. v. Steckler</u>, 244 N.W.2d 698 (1976), the North Dakota Supreme Court discussed the interaction between the Retail Installment Sales Act and North Dakota's usury statute:

    There is significant authority for the proposition that retail sales are exempt from usury statutes because the "time-price differential" (credit service charge in Chapter 51-13, N.D.C.C.) is not defined as "interest" within usury statutes such as § 47-14-09 and § 47-14-10, N.D.C.C. Cases so holding are collected in an Annotation at 14 A.L.R.3d 1065. An excellent review of such theory is also found in Warren, <u>Regulation of Finance Charges in Retail Instalment Sales</u>, 68 Yale L.J. 839 (1959). Some courts hold otherwise, however, concluding that the only reasonable conclusion is that such finance charges are, indeed, "interest". <u>See, e.g.</u>, <u>Rollinger v. J. C. Penney Co.</u>, 86 S.D. 154, 192 N.W.2d 699 (1971); <u>State v. J. C. Penney Co.</u>, 48 Wis. 2d 125, 179 N.W.2d 641 (1970).

    We find it unnecessary to reach such question in this case, because we conclude that the Legislature has provided a specific method of regulating transactions where a bona fide retail installment sale is made to a retail buyer.

    Section 1-02-07, N.D.C.C., provides:

    "*Particular controls general*.--Whenever a general provision in a statute shall be in conflict with a special provision in the same or in another statute, the two shall be construed, if possible, so that effect may be given to both provisions, but if the conflict between the two

provisions is irreconcilable the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest legislative intent that such general provision shall prevail."

In the instant case, we believe that the provisions of §§ 47-14-09 and 47-14-10, N.D.C.C., are general provisions which, in the absence of specific provisions, may be applicable to finance charges added onto the principal balance in a retail installment sales contract. Section 47-14-09, N.D.C.C., itself states, in part, that its limitations apply "Except as otherwise provided by the laws of this state. . . ." We believe that Chapter 51-13, N.D.C.C., contains the special provisions which fall within the "exception clause" of § 47-14-09, N.D.C.C.

In the instant case, both parties agree that the transaction in question was a bona fide retail installment sale within the terms of Chapter 51-13, N.D.C.C., and that a "retail installment contract" was entered into between Steckler and Mandan Supply. We conclude that the special provisions of Chapter 51-13, N.D.C.C., relating to retail installment sales must govern a transaction such as is presented in the instant case.

Mandan Supply, Inc., 244 N.W.2d at 702 (footnote omitted).

The undisputed evidence before the Court reveals that the transaction between Delorme and Autos, Inc. is a retail installment sales contract. The Court finds that the contract between Delorme and Autos, Inc. meets the disclosure requirements of N.D.C.C. § 51-13-02(2). According to the plain language of N.D.C.C. § 51-13-01, Autos, Inc. is a regulated lender and is not subject to the usury statute, N.D.C.C. § 47-14-09. Delorme's motion for summary judgment on Count I (usury) is denied and Count One is dismissed.

## C.    COUNT TWO – TRUTH IN LENDING ACT

Delorme alleges that the Defendants have violated the federal Truth in Lending Act, 15 U.S.C. §§ 1601-1776(e), by understating the cost of borrowing money. Delorme alleges that Autos,

Inc. failed to include the loan fee and document administration fee in calculating the finance charge.

She argues that the fees should be included in the finance charge, rather than the amount financed.

The United States Supreme Court has explained:

> Congress enacted the Truth in Lending Act (TILA), 82 Stat. 146, in order to promote the "informed use of credit" by consumers. 15 U.S.C. § 1601(a). To that end, TILA's disclosure provisions seek to ensure "meaningful disclosure of credit terms." Ibid. Further, Congress delegated expansive authority to the Federal Reserve Board . . . to enact appropriate regulations to advance this purpose. § 1604(a).

Household Credit Servs., Inc. v. Pfennig, 541 U.S. 232, 235 (2004).

Finance charges are regulated under Regulation Z (12 C.F.R. § 226.4), which provides, in part:

> (a)  Definition. The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction.
>
> . . .
>
> (b)  Examples of finance charges. The finance charge includes the following types of charges, except for charges specifically excluded by paragraphs (c) through (e) of this section:
>
> > (1)  Interest, time price differential, and any amount payable under an add-on or discount system of additional charges.
> >
> > (2)  Service, transaction, activity, and carrying charges, including any charge imposed on a checking or other transaction account to the extent that the charge exceeds the charge for a similar account without a credit feature.
> >
> > (3)  Points, loan fees, assumption fees, finder's fees, and similar charges.
> >
> > (4)  Appraisal, investigation, and credit report fees.
> >
> > . . .

(c)    Charges excluded from the finance charge.  The following charges are not finance charges:

    (1)    <u>Application fees charged to all applicants for credit, whether or not credit is actually extended</u>.

    (2)    Charges for actual unanticipated late payment, for exceeding a credit limit, or for delinquency, default, or a similar occurrence.

    (3)    Charges imposed by a financial institution for paying items that overdraw an account, unless the payment of such items and the imposition of the charge were previously agreed upon in writing.

    (4)    Fees charged for participation in a credit plan, whether assessed on an annual or other periodic basis.

    (5)    Seller's points.

    (6)    Interest forfeited as a result of an interest reduction required by law on a time deposit used as security for an extension of credit.

    (7)    [Certain fees related to real estate.]

    (8)    Discounts offered to induce payment for a purchase by cash, check, or other means, as provided in section 167(b) of the Act.

12 C.F.R. § 226.4 (emphasis added).  In <u>Pfennig</u>, the Supreme Court held that Regulation Z is binding on the courts.  <u>Pfennig</u>, 541 U.S. at 242.

## 1)    <u>AUTOS, INC., ROBERT OPPERUDE, AND JAMES HENDERSHOT</u>

Autos, Inc., Robert Opperude, and James Hendershot contend that the loan fee and document administration fee are excluded from the finance charge under 12 C.F.R. § 226.4(c)(1).  They assert the fees are charged to all purchasers, and are not individual to Delorme's transaction.  Robert Opperude testified about the fees in a deposition:

Q.      What about loan fees?  What are loan fees?

A.      Loan fees are a fee that we charge – Global Auto charges.  It is for running the office and to – to process the loan.

Q.      So cost of doing business as a lending institution?

A.      Yes.

<u>See</u> Docket No. 44, p. 54.  Opperude testified further:

Q.      Okay.  What all is in your document administration fee of 195?

A.      That is a – whatever the license and title transfer fee would be, comes out of there.

. . .

Q.      How would you find out what the license fee was supposed to be for this vehicle?

A.      It's factored into the 195.

Q.      It's part of the 195.

A.      Yes.

. . .

Q.      . . . [A] loan fee of $300.  What – explain what that is.

A.      I think we talked about that.  That was our loan fee that we use for – for administrating the loan that we're doing, for processing a loan.

<u>See</u> Docket No. 44, pp. 71, 73-74.

James Hendershot also testified regarding the fees:

Q.      I notice there's a document administration fee of 195 on this form.  What is that?

A.      That's – that's a fee that is charged to provide title transfer and put the car into their name and if there's a lienholder, put the lienholder on the title.

Q.     And does that money go to who then?

A.     Global Auto.

Q.     Okay.  And – but who – who or what does Global Auto have to pay to accomplish this document administration process?  Anybody?

A.     I'm not sure how that gets broke down.  That is something that Bob does.

Q.     Because I notice there's other lines for the motor vehicle excise tax and the license and title fees.  They're separate and distinct from the administration fee you're charging here; is that correct?

A.     Yes.

Q.     Go down a little farther, there's a loan fee?

A.     Yes.

Q.     $300 in this case?

A.     Yes.

Q.     Who decides how much the loan fee is?

A.     Bob and I.

Q.     Is $300 typical?

A.     It's standard.

<u>See</u> Docket No. 53-1, p. 10.

Randy Westby testified about the fees, as well:

Q.     Are Loan Fees a form of charging interest?

A.     I don't know.

Q.     What would you characterize a Loan Fee to be?

20

A.     Could be administration, could be a document fee, could be credit checks, could be all kinds of things.  I don't know what this is.

Q.     Well, in this instance there's a Document Administration Fee of $195. And then there's a $300 Loan Fee.  Is a Loan Fee in that context an interest cost?

A.     I don't know what that Loan Fee is for.  It could be to recover some cost involved with that loan, credit checks, et cetera.

See Docket No. 45, p. 39.

The Court finds that the record is insufficient to determine whether the loan fee and document administration fee are excluded from the finance charge under 12 C.F.R. § 226.4(c)(1). Opperude and Hendershot assert that all customers who received loans from Autos, Inc. were charged the loan fee and document administration fee.  It is not clear whether the fees were charged to customers that applied for loans but were denied.  Regulation Z excludes fees that are charged to all applicants, regardless of whether credit is extended, from the finance charge.   12 C.F.R. § 226.4(c)(1).  There are genuine issues of material fact in dispute as to the alleged violations of the Truth in Lending Act.  Delorme's motion for summary judgment on Count Two as to Autos, Inc., Opperude, and Hendershot is denied at this stage.

2)     **RW ENTERPRISES AND RANDY WESTBY**

RW Enterprises and Randy Westby contend they are not liable under the Truth in Lending Act as the assignee of the loan from Autos, Inc. to Delorme.  Regarding liability of assignees, the Act provides as follows:

Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter or proceeding under section 1607 of this title which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is

21

apparent on the face of the disclosure statement, except where the assignment was involuntary. For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.

15 U.S.C. § 1641(a).

As outlined above, the Court cannot determine from the record whether the contract misstates the finance charge. Further evidence is necessary to determine whether the loan fee and document administration fee are excluded from the finance charge under Regulation Z. Therefore, the alleged violation of the Truth in Lending Act is not apparent from the face of the document. There are genuine issues of material fact in dispute which preclude the granting of partial summary judgment at this stage. Delorme's motion for summary judgment on Count Two as to RW Enterprises and Randy Westby is also denied.

### D.       COUNT THREE – RETAIL INSTALLMENT SALES ACT

Delorme contends the Defendant's have violated North Dakota's Retail Installment Sales Act, N.D.C.C. ch. 51-13. Delorme argues the Defendants have violated the Act by misstating the finance charge and charging an excessive late fee. The Retail Installment Sales Act provides, in relevant part:

51-13-02.  Requirements as to retail installment contracts.

. . .

2.       c.       The contract must contain:

(1)       The names of the seller and the buyer, the place of business of the seller, the residence or place of business of the buyer as

22

specified by the buyer and a description of the personal property including its make, year model, model and identification numbers or marks, if any, and whether it is new or used.

(2) The cash price of the personal property which is the subject matter of the retail installment sale.

(3) The amount of the buyer's downpayment, itemizing the amounts paid in money and in goods and containing a brief description of the goods, if any, traded in.

(4) The difference between paragraphs 2 and 3, which is the unpaid balance of cash price.

(5) The amount, if any, included for insurance, specifying the coverages.

(6) The amount, if any, of official fees.

(7) The amount financed, which is the sum of paragraphs 4, 5, and 6.

(8) The amount of the finance charge, if any.

(9) The total of payments, which is the sum of paragraphs 7 and 8, payable by the buyer to the seller, the number of installments required, the amount of each installment expressed in dollars, and the due date or period thereof.

(10) The deferred payment price, which is the sum of the amounts determined in paragraphs 2, 5, 6, and 8.

. . .

The items need not be stated in the sequence or order set forth above; additional items may be included to explain the calculations involved in determining the amount to be paid by the buyer.

. . .

e. A contract may provide for the payment by the buyer of a delinquency and collection charge on each installment in default for

a period of more than ten days in an amount equal to ten percent of the delinquent installment payment or ten dollars, whichever is less; provided, that only one such delinquency and collection charge may be collected on each installment in addition to interest accruing thereon.

3.      If a retail installment sale is also subject to the Truth in Lending Act [15 U.S.C. 1601-1667e], the seller may, instead of complying with the disclosure requirements of subsection 2, comply with all requirements of the Truth in Lending Act. A seller who complies with the Truth in Lending Act still must comply with the provisions of this section governing matters other than disclosure.
. . .

51-13-03.  Finance charge limitation.

1.      A retail seller may contract for in a retail installment contract and charge, receive, and collect the finance charge computed on the principal balance of the contract or obligation from the date thereof until paid.  A retail seller who complies with the disclosure provisions of this chapter is deemed a regulated lender under section 47-14-09.

2.      The finance charge must be computed on the amount financed as determined under subdivision c of subsection 2 of section 51-13-02.  This finance charge may be precomputed on the amount financed calculated on the assumption that all scheduled payments will be paid when due and the effect of prepayment is governed by the provisions on rebate upon prepayment.

3.      When a retail installment contract provides for unequal or irregular installments, the finance charge must be at the effective rate provided in subsection 1, having due regard for the schedule of installments.

4.      The finance charge must be inclusive of all charges incident to investigating and making the contract, and for the extension of the credit provided for in the contract and no fee, expense, or other charge whatsoever may be taken, received, reserved, or contracted for except as provided in this section and in subdivision e of subsection 2 of section 51-13-02 and for those items expressly provided for in the retail installment contract as set forth in subdivision c of subsection 2 of section 51-13-02.

. . .

51-13-07.  Penalties.

Any person who willfully violates this chapter is guilty of a class A misdemeanor.  A willful violation of section 51-13-02 or 51-13-03 by any person bars that person's recovery of any finance charge or delinquency or collection charge on the retail installment contract involved.


### 1)  AUTOS, INC., ROBERT OPPERUDE, AND JAMES HENDERSHOT

Autos, Inc., Opperude, and Hendershot contend they are not subject to the disclosure requirements of the North Dakota Retail Installment Sales Act under N.D.C.C. § 51-13-02(3) because they are subject to the Truth in Lending Act.  As explained above, the Court cannot determine from the current record whether Autos, Inc. is in compliance with the disclosure requirements of the Truth in Lending Act.  If Autos, Inc. is in compliance with the Truth in Lending Act's disclosure requirements, then it arguably need not comply with the disclosure requirements of the Retail Installment Sales Act.  Therefore, the Court denies Delorme's motion for partial summary judgment with respect to Count Three and the claim against Autos, Inc., Opperude, and Hendershot.

Autos, Inc., Opperude, and Hendershot essentially concede that if the North Dakota Retail Installment Sales Act governs, they violated N.D.C.C. § 51-13-02(2)(e) by charging an excessive late fee.  The Retail Installment Sales Act provides that a late fee can be ten percent of the installment payment or ten dollars, whichever is less.  The $25 late fee charged to Delorme violates this provision.  However, Autos, Inc., Opperude, and Hendershot argue there is a disputed issue of fact as to whether they willfully violated the statute.  The Retail Sales Installment Act's penalty provision, N.D.C.C. § 51-13-07, applies only to willful violations of the statute.  Delorme argues

the undisputed evidence reveals the Defendants chose to charge a late fee and arbitrarily decided on an amount of $25. The Court finds that summary judgment is not appropriate at this stage as there are genuine issues of material fact in dispute as to whether willful violations of the statute occurred.

**2)      RW ENTERPRISES AND RANDY WESTBY**

RW Enterprises contend it is not subject to the Retail Installment Sales Act. RW Enterprises is not considered to be a "retail seller" because it did not sell the vehicle to Delorme. N.D.C.C. § 51-13-01(12). RW Enterprises is the "holder" of the contract, which is defined as "the seller of the personal property under or subject to the contract, or, if the contract is purchased by a financing agency or other assignee, the financing agency or other assignee." N.D.C.C. § 51-13-01(6). The relevant disclosure requirements of N.D.C.C. § 51-13-02 refer to the seller, not the holder.

Robert Opperude testified regarding Autos, Inc.'s agreement with RW Enterprises:

Q.      Let's look at this agreement. What does it require RW Enterprises to do?

. . .

A.      To buy the contract.

Q.      And in consideration for buying that contract what does RW Enterprises receive?

A.      Fifteen percent of the – of the principal balance.

Q.      I think there's a better way to describe that other than 15 percent of your principal balance.

A.      Well –

Q.      A rate of return of 15 percent on the monies advanced.

A.      Correct.  Yes.

. . .

Q.      In conjunction with that what is Global Auto required to do?

A.      To collect the payments, responsible for the vehicle.

. . .

Q.      And if one of these payments are in default to you as Global Auto, you still make your monthly payment to RW Enterprises.

A.      Yes.

See Docket No. 44, pp. 52-53, 58.

The record reveals that RW Enterprises and Westby had no role in determining the interest rate to be charged, disclosing the finance charge, or charging late fees.  These actions were taken by Autos, Inc. as the retail seller.  No provision of the North Dakota Retail Installment Sales Act provides for RW Enterprise's liability for their actions as the holder.  The Court finds, as a matter of law, that RW Enterprises and Westby are not subject to the relevant disclosure and late fee provisions of N.D.C.C. § 51-13-02.  Therefore, Delorme's motion for partial summary judgement on the Retail Installment Sales Act claim against RW Enterprises and Westby is denied and the claim is dismissed.


IV.     **CONCLUSION**

The Court has carefully considered the entire record, the parties' briefs, and relevant case law.  Delorme's "Motion to Certify Class Action Status for Causes of Action I, III, IV, VII, and VIII and for the Appointment of Class Counsel" (Docket Nos. 30 and 39) is **DENIED**.  The motion was

untimely and is also denied on its merits. Delorme's "Motion for Summary Judgment on Count I – Usury" (Docket No. 55) is **DENIED** and Count One is **DISMISSED**. Delorme's "Motion for Summary Judgment on Count II, Federal Truth-In-Lending Act Count III, North Dakota Retail Installment Sales Act" (Docket No. 41) is **DENIED**. However, Delorme's claims as to RW Enterprises and Randy Westby as set forth in Count III are dismissed as a matter of law.

**IT IS SO ORDERED.**

Dated this 8th day of May, 2012.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court